I «CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE

Trudy Zorn (“Zorn”) was employed by East Jefferson General Hospital (“EJGH”) as a patient access representative in the cardio-pulmonary department. She was hired as a secretary on April 1, 1985. In 1997, she was reclassified as an office assistant and then promoted to patient access representative. Her direct supervisor from 1994 to 1998 was Audie Hymel (“Hy-mel”), administrative director of cardiopulmonary services. She was also supervised by Ann Bourgeois (“Bourgeois”) in 1995. In July 1998, Helen Midkiff (“Mid-kiff’),- supervisor of the Jefferson Pulmonary Association, became her direct supervisor.
In 1999, Midkiff appointed Zorn, Lisa Picard and Laura Coleman as “lead- staff’ on a rotating basis. Each week, one of the “lead staff’ members would keep track of the scheduling and clerical operations of the office arid fill out a “Shift Summary” sheet. Zorn was the “lead staff’ member for the week of April 26 to 30, 1999. Pi-card was the “lead staff’ member the week before. On April 30, 1999, Zorn placed a memo in Midkiffs mailbox referencing “Time Sheet Falsification”. She accused Picard and Coleman of falsifying their hospital payroll records by not accounting for tardiness and breaks. Zorn attached copies of Picard’s and | -¡Coleman's EJGH time sheets to the memo. The time sheets were for the payroll period April 11, 1999 to April 24, 1999 and were signed by the employee and Midkiff. Midkiff received the memo with the attached time sheets on Monday, May 3, 1999. Midkiff contacted her supervisor, Bourgeois, and they both contacted Hymel. Bourgeois and Midkiff then interviewed Picard and Coleman regarding the alleged inaccuracies in the time sheets. Picard and Coleman both claimed they made up their time by working late.
On Tuesday, May 4, 1999, Zorn was called into Bourgeois’ office around 1:30 p.m. Hymel and Midkiff were present. Hymel asked Zorn if she had sent the *476 memo and the attached time sheets to Midkiff. Zorn responded that she had. Hymel stated that copying time sheets was grounds for immediate termination. Zorn asked if she was fired and Hymel responded that she was, -
Bourgeois then asked Zorn to sign a statement before she left. However, Zorn refused because the- statement said the time sheets could only be obtained through unlawful entry into the supervisor’s office. Zorn informed them that she had found the time sheets on the nurse’s desk in the file room out in the open when she went to pull charts. Zorn was again told she was fired and was escorted out of the. office. Zorn did not sign the statement.
Hymel testified at trial that he made the decision to terminate Zorn because she had copied confidential team members’ records, which violated EJGH’s policy. The policy provided that breach of confh dentiality, such as unauthorized possession, use, copying or reading of hospital records or disclosure of information contained in such records to unauthorized persons, was grounds for immediate discharge. Hymel met with Bourgeois and Midkiff to review the memo and the attachments. He then called the personnel department of EJGH and explained the situation. He stated he thought it was grounds for termination, but wanted to make sure. He was told it was definitely grounds for termination.
|4Zorn then appealed the decision through the grievance procedure of EJGH. Ultimately, the CEO of EJGH, Peter Betts (“Betts”), sent her a letter stating that he had reviewed the recommendation of the grievance hearing and upheld her termination because she had breached confidentiality for personal gain or advancement.
On March 29, 2000, Zorn filed suit against EJGH and against Betts, Hymel, Bourgeois, and Midkiff individually and in their capacities as employees of EJGH. Her petition included claims for wrongful discharge, retaliatory discharge as a “whistle-blower”, defamation per se, violations of her state and federal constitutional rights, and various negligence claims. Defendants filed an Exception of No Cause of Action with regards to Zorn’s claims of wrongful discharge and failure to act as a prudent employer. Defendants also filed a motion for summary judgment with regards to the claims of defamation per se, whistle blower protection, and constitutional violations. The trial court issued a judgment dismissing all claims except for the whistle-blower claims under La. R.S. 23:967 and La. R.S. 42:1169. Defendants filed writs with this Court regarding that Judgment with respect to the whistle-blower claims. This Court denied those writs on March 5, 2004 finding that at least one question of fact remained regarding that issue, which would preclude the granting of summary judgment.
Trial was held on March 22, 2004. At trial, Zorn argued that she acted in good faith when she reported the “stealing of time” to her supervisors, her actions were taken as part of her new duties as “lead staff”, and she was fired as an act of reprisal by her supervisors. Defendants argued at trial that Zorn was fired because she violated hospital policy by copying hospital records. The trial court issued a Judgment, with written reasons, on June 21, 2004 dismissing Zorn’s remaining claims against all defendants and assigning all costs to Zorn. The trial court found that Zorn may have acted in good faith when she reported the theft of time, |showever, she did violate hospital policy. Therefore, the defendants could terminate Zorn for this violation. The trial court pointed out that trial testimony revealed that Zorn would not have suffered disciplinary action *477 if she had simply reported the wrongdoing and not copied the time sheets. She had previously reported the theft of time and had not received disciplinary action.
Zorn now appeals the trial court’s judgment alleging that the trial court erred when it found that the public pay documents, freely available under La. R.S. 44:31(B), were hospital records, and therefore, she had violated hospital policy and the law by copying them. Thus, she claims the trial court incorrectly found that defendants were justified in terminating her and finding that she could not claim protection under the whistle blower statutes.
For the reasons which follow, we affirm the trial court’s judgment dismissing all of Zorn’s claims at her cost.

DISCUSSION

Zorn seeks protection from termination pursuant to La. R.S. 23:967, known as the general whistleblower statute, and La. R.S. 42:1169, known as the public whistle-blower statute. We agree with the trial court and find that Zorn was in good faith when she reported the theft of time by her fellow employees. However, her termination is not entitled to the protections of La. R.S. 23:967 or La. R.S. 42:1169 because she violated EJGH policy in the process of reporting the theft. She copied the employees’ time sheets and attached them to a memo she had written to her supervisors.
The EJGH Discipline Policy provided that the “[ujnauthorized possession, use, copying or reading of Hospital records, or disclosure of information contained in such records to unauthorized persons” is prohibited conduct. We agree with the trial court and find that these time sheets are hospital records, kept in the course of conduct of EJGH’s business. Therefore, the unauthorized copying of these time Lsheets was prohibited by the EJGH policy. Zorn copied the time sheets, which she gave to Midkiff. These actions by Zorn violated the EJGH policy and this violation justified defendants in terminating her employment.
We do not find that Zorn was terminated as retaliation for her report of the theft of time. She had previously reported similar situations, without any consequences to her employment. We agree with the trial court’s finding that had Zorn not copied the records, she would not have been terminated.
In accordance with the above, we affirm the judgment of the trial court dismissing all of Zorn’s claims at her cost.

AFFIRMED.